IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VIRTUAL FLEET MANAGEMENT, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:16-CV-01108-JRG |
| v. | § § | |
| LAND AIR SEA SYSTEMS, INC., | § § § | |
| Defendant. | § § | |

# ORDER

Before the Court is Plaintiff Virtual Fleet Management's Emergency Motion to Compel and Request for Sanctions (Dkt. No. 47) and the Court's Order to Show Cause (Dkt. No. 50). Having considered the Parties' arguments and for the reasons set forth below, the Court **GRANTS** the Plaintiff's Motion and finds that the Defendant's counsel's behavior merits sanctions. In addition, the Court has determined that Defense counsel Steele Nicolson Gillaspey has failed to show cause why he should not be sanctioned and the removal of Mr. Gillaspey as Defendant's counsel from further participation in this litigation is required in the interests of justice.

## I.  BACKGROUND

On October 6, 2016, Plaintiff Virtual Fleet Management, LLC ("Virtual Fleet") filed suit against Defendant Land Air Sea Systems, Inc. ("Land"), alleging patent infringement of U.S. Patent No. 6,958,701. (Dkt. No. 1.) On December 19, 2016, Land filed its Answer to the Complaint. (Dkt. No. 8.) In addition to its affirmative defenses (which included non-infringement and invalidity), Land asserted counterclaims seeking declaratory judgments of non-infringement and invalidity. (*Id.* at 8.)

Between February 14 and February 21, 2017, Virtual Fleet's counsel conferred with Land's counsel to arrive at mutually acceptable deadlines and language to incorporate into a Docket Control Order, a Protective Order, and a Discovery Order. (Dkt. No. 31-1, Ex. A at 1–2.) However, Land did not provide its Rule 26 Initial and Additional Disclosures, which were due on February 21, 2017. (*Id.*) In addition, despite filing its counterclaims in December, Land did not serve Virtual Fleet with discovery, did not seek to take any depositions, did not issue any subpoenas, and did not provide any evidence in support of its counterclaims. (*Id.*)

Land also failed to serve Virtual Fleet its P.R. 3-3 Invalidity Contentions, which were originally due on April 28, 2017, and later due to be served on May 24, 2017. (*Id.*) Land failed to serve both its P.R. 3-3 Invalidity Contentions and 3-4 Supporting Documents. (*Id.*) After Virtual Fleet's counsel reached out to Land for the production of the overdue disclosures, Land's counsel, Mr. Steele Gillaspey, agreed that the disclosures would be produced no later than May 24, 2017. (Dkt. No. 31 at 2.) They were not produced. (*Id.*) On June 16, 2017, Mr. Gillaspey stated that Land would produce the disclosures by June 23, 2017. (*Id.*) Land did not. (Dkt. No. 33.)

Virtual Fleet filed a Motion to Dismiss Land's Counterclaim (of Invalidity) with Prejudice for Failure to Prosecute Pursuant to Rule 41(b). (Dkt. No. 31.) Land did not respond. (Dkt. No. 31-1, Ex. A at 1–2.) On September 18, 2017, this Court held a status conference and a hearing on the Motion to Dismiss Land's Counterclaim of Invalidity. (Dkt. No. 42.) At the conference, Mr. Gillaspey stated that he failed to produce the disclosures and missed the deadlines for health reasons, but did not provide further detail, and did not explain why he did not keep Virtual Fleet's counsel informed. (*See also* Dkt. No. 31, Ex. B.) This Court granted the Motion to Dismiss Land's Counterclaim of Invalidity with Prejudice for Failure to Prosecute, and ordered the Parties to meet and confer to begin production of the Rule 26 discovery disclosures and work to remedy the missed

deadlines. (Dkt. No. 42; Dkt. No. 47 at 2–3.) The Parties submitted a joint status report indicating that production would begin the week of September 25, 2017. (Dkt. No. 41.) Land agreed to produce its (1) Rule 26 Initial and Additional Disclosures ("the Rule 26 Disclosures") and (2) discovery responses by October 9, 2017. (Dkt. No. 47 at 3.) On October 9, Land served unresponsive and incomplete answers to Virtual Fleet's discovery requests. (Dkt. No. 47 at 3; Dkt. No. 47-1, Ex. 1.) For example, in response to an interrogatory seeking information regarding sales of the accused products and related financial information, Land stated that it would not produce the information because of "confidentiality concerns," but that it would provide "a pricing schedule it provides to the public." (Dkt. No. 47-1, Ex. 1 at 3.) Land did not explain why the agreed Protective Order would not allay any concerns with respect to confidentiality.[1] In addition, Land did not produce its Rule 26 Disclosures by October 9.

On October 26, 2017, Virtual Fleet's counsel sent Mr. Gillaspey a five-page letter, detailing the deficiencies of the October 9 production, requested a meet and confer, and engaged in a short phone call with Mr. Gillaspey on that same day. (Dkt. No. 47 at 3–4.) On November 10, Virtual Fleet again reached out to Mr. Gillaspey because Virtual Fleet was still waiting on Land's Disclosures and responses to Virtual Fleet's discovery requests. (*Id.* at 4.) Mr. Gillaspey did not respond to the letter or additional requests for contact. On that same day, Mr. William Cornelius, the court-appointed mediator, filed a status report, indicating that in accordance with the Court's Scheduling Order, Plaintiff's counsel and Mr. Cornelius attempted to schedule mediation. (Dkt. No. 46.) The status report explained that after several failed attempts to secure input regarding scheduling from Mr. Gillaspey, Mr. Cornelius had set mediation for November 17, 2017. (*Id.*)

---

[1] In addition to Land's boilerplate refusals to provide information under a proffered confidentiality concern of divulging the information to a "competitor," none of documents produced were replaced with bates-numbered copies. (Dkt. No. 47-1, Ex. 1 at 2.)

Confirmation letters, invoices, and follow-up emails were all sent to Mr. Gillaspey before November 8, 2017. (*Id.*) No response was received.

On November 13, 2017, Plaintiff filed an Emergency Motion to Compel Land to produce the Disclosures (the same ones that were originally due in February 2017, but moved to October 9, 2017) and to respond to two sets of written discovery (due in July 21 and September 25, 2017, but moved to October 9, 2017), as well as a Request for Sanctions. In light of the Mediator's status report, the Court took affirmative action and *sua sponte* ordered that Mr. Gillaspey appear with an authorized corporate representative for in-person mediation in Tyler, Texas on November 17, 2017. (Dkt. No. 48.) The Court also expressly carried the Plaintiff's Emergency Motion to Compel and Request for Sanctions until after mediation completed on November 17, 2017. (*Id.*; Dkt. No. 50)

The Court was then advised (by a second status report from the Mediator) that on November 16, 2017, Mr. Gillaspey called Mr. Cornelius and that Mr. Gillaspey informed Mr. Cornelius that he would not be in attendance at the mediation the following day. (Dkt. No. 49 at 1.) Mr. Cornelius encouraged Mr. Gillaspey to communicate as quickly as possible to the Court that he did not intend to attend mediation. (*Id.*) Mr. Gillaspey did not appear for mediation on November 17, 2017. (*Id.*)

On November 20, 2017, the Court noticed a hearing for November 28, 2017 at 4:00 p.m. CT at which time Mr. Gillaspey was ordered to appear in Marshall, Texas, and show cause as to why his failure to appear in-person for mediation did not constitute willful disobedience of a lawful order of this Court and why appropriate sanctions and/or disciplinary actions permitted by statute or the Court's inherent power should not be imposed ("the Hearing"). (Dkt. No. 50.) This Court also ordered the Parties to appear before the Court at the stated date and time, at which point the

Court would also take up the opposed Emergency Motion to Compel and Request for Sanctions ("the Emergency Motion"). (*Id.*) In the order, the Court noted that:

> [a]t 2:37 p.m. CT on November 16, 2017, the Court received a phone call from Mr. Gillaspey, indicating that a notice would be filed on the docket, but Mr. Gillaspey did not explain what type of notice would be filed. In addition, Mr. Gillaspey did not indicate to the Court that he would not be attending mediation.
>
> Mr. Gillaspey did not appear for mediation on November 17. Mr. Gillaspey has not as of this time filed any sort of notice, response, or motion on the docket to explain his failure to appear for mediation on November 17 and otherwise comply with the Court's order.

(*Id.* at 2.) Mr. Gillaspey did not file any motion or notice with respect to the Order to Show Cause prior to November 28, 2017. In fact, until November 28, 2017, at 1:14 PM CST, no further filings from Mr. Gillaspey were entered. Beginning at 1:14 PM CST and continuing until 3:12 PM CST, Mr. Gillaspey filed, via CM/ECF, a Motion to Alter Judgement, a Response in Opposition to the Emergency Motion to Compel, and Additional Attachments to the Motion to Alter Judgement ("the Opposition"). (Dkt. Nos. 51, 52, and 54.)[2] Notably, the Opposition was filed two hours before the Hearing. (Dkt. No. 52 (filed at 2:02 PM CST).)

During this series of filings, Mr. Gillaspey called the Chambers of the Court and spoke with a law clerk at 2:38 PM CST. Mr. Gillaspey informed the law clerk that he was currently located in San Diego, that he had, until just then, mistakenly believed the Show Cause Hearing was telephonic, and that he would be unable to attend the hearing in person. He then requested the Court hold the Hearing telephonically. While, the Court believed its order clear that he should appear "in Marshall, Texas," the Court allowed Mr. Gillaspey to appear telephonically. Plaintiff's counsel appeared in person, as ordered.

---

[2] Land's response to the Emergency Motion was filed after the fourteen-day period within which a response may be filed. (Dkt. No. 51, 54); L.R. CV-7(e) ("A party opposing a motion has fourteen days from the date the motion was served in which to file a response and any supporting documents, after which the court will consider the submitted motion for decision."). Land did not file a motion to extend the period within which a response to the Emergency Motion could be filed.

5

At the Hearing, the Court inquired regarding Mr. Gillaspey's disobedience of the Court's Order to Mediate. Mr. Gillaspey stated that he did not attend the Mediation because "we were in no way prepared to proceed with mediation, and it would have been a . . . nullity." (Uncertified Transcript, Show Cause Hearing, November 28, 2017 ("Hearing Tr.") at 5:1–2.) Mr. Gillaspey believed there were multiple issues that needed to be addressed prior to Mediation, including, for example, "indicia that the '701 patent is not an enforceable patent," and "settlement agreements that were entered by [the Plaintiff regarding the patent]." (*Id.* at 5:6–7, 5:16–17.) After being advised by the Court that Mr. Gillaspey was obliged to comply with the Court's order, Mr. Gillaspey stated that he had reached out to the Mediator in what he thought was "the correct effort." (*Id.* at 7:7–9.) Mr. Gillaspey did not explain why he did not file a motion asking for an extension, or otherwise enter appropriate motions based on whatever basis he might have put forward to show that mediation at that time, date, and place was not beneficial. (*Id.* at 8:14–17 ("And again, Your Honor, [] as to the actual format of the proceeding, I did not file. I did follow up, however, in a manner that was not as proper as it should have been, and I do apologize to the Court and to counsel.").)

Regarding Virtual Fleet's Emergency Motion, Mr. Gillaspey admitted that Land had held back financial disclosures, and, at the Hearing, moved, for the first time, "that the Court at least grant a request that we hold back on the financial materials only until we can make a determination as to the issue of liability, as we believe the issue of liability is a major question." (*Id.* at 16:17–20; *see also id.* at 17:25–18:1 ("They do not have the financial documents.")).[3] Prior to November

---

[3] This withholding was and is in contravention with the Federal Rules of Civil Procedure, the Court's Discovery Order, and the Local Patent Rules. *See* Fed. R. Civ. P. 26(a)(1) ("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: . . . (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ."); L.R. CV-26(d); (Dkt. No. 25, ¶¶ 1, 3).

28, 2017, Mr. Gillaspey had not filed or otherwise made any request for relief from the discovery obligations.

## II. LEGAL STANDARD

### A. Motion to Compel

The rules of discovery are accorded a broad and liberal application to affect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "A district court has broad discretion in all discovery matters...." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)); s*ee also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000). The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("Federal Rule of Civil Procedure 37(a)[ (3)(B)(iii) and (iv) ] empowers the court to compel the production of documents ... upon motion by the party seeking discovery.").

The moving party bears the burden of showing that the materials and information sought are "relevant to any party's claim or defense" or "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1); *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive. *See, e.g., SSL Services, LLC v. Citrix Systems, Inc.*, 2010 U.S. Dist. LEXIS 11470, 2010 WL 547478 at *2 (E.D. Tex. Feb. 10, 2010) (citing *Spiegelberg Mfg., Inc. v. Hancock*, 2007 U.S. Dist. LEXIS 88987, 2007 WL 4258246 at *1 (N.D. Tex. Dec. 3, 2007)).

7

### B. Request for Sanctions

The Court's inherent power to control the judicial process includes the power to impose a sanction for "bad faith conduct in litigation." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). "[T]he threshold for the use of inherent power sanctions is high." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998).

### III. ANALYSIS

This Court is charged with the fair, impartial, and swift administration of the Constitution and laws of the United States. It is not without cause that the legal maxim "justice delayed is justice denied" is held dear within the mind of the Nation—our society of laws demands those laws be both interpreted and applied with quick dispatch in service of the "Justice" established by our constitutional order. U.S. CONST. pmbl.

However, this Court has been confronted with a gross waste of time—time neither well spent nor advancing the administration of justice. This patent infringement case has required frequent intervention by the Court, frustrated by difficulties reaching Land's counsel, unexplained delays, and absentee conduct. Despite assurances by Mr. Gillaspey at the September 18, 2017 hearing that Land would be responsive, notwithstanding what had happened theretofore, Land has repeatedly ignored Plaintiff's discovery requests, production deadlines, and now, orders from the Court. (Hearing Tr. at 9:10–10:1.)

The Court does not shy away from engaging with litigants in addressing issues brought to it for disposition. The Court does not avoid dealing with time-sensitive issues which demand its attention. However, the issues continually facing the Court in this matter are issues *created* by the unresponsive conduct of Mr. Gillaspey. The Court's time spent dealing with such issues is time lost, squandered as a direct result of Mr. Gillaspey's conduct.

A district court is obliged to act against improper conduct occurring in any proceeding before it. *Lelsz v. Kavanagh*, 137 F.R.D. 646, 653 (N.D. Tex. 1991) (citing *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980)). *See also Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976); *Sanders v. Russell*, 401 F.2d 241, 246 (5th Cir. 1968). "Authority clearly supports the right of a trial judge to regulate the conduct of attorneys during the course of a case." *United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir. 1980), *cert. denied*, 449 U.S. 961 (1980). The drafters of the amended Rule 11 of the Federal Rules of Civil Procedure specifically intended to provide a means of deterring frivolous litigation that would not have the unwanted side effect of undermining the vindication of any substantive right. C. Wright & A. Miller, § 1332 Criticisms of the 1983 and 1993 Amendments, 5A Fed. Prac. & Proc. Civ. § 1332 (3d ed.). Furthermore, although Federal Rule of Civil Procedure 11 is the most common method used for disciplining attorney behavior in the federal courts, "that rule is a redundant supplement to other methods at the Court's disposal, including civil contempt, the Court's inherent power to regulate the administration of justice, and 28 U.S.C. § 1927." *Lelsz*, 137 F.R.D. at 654. The Court's inherent power is embodied in the Eastern District of Texas's Local Rules. Under Local Rule AT-2:

> (1) **Grounds for Disciplinary Action.** This court may, after an attorney has been given an opportunity to show cause to the contrary, take any appropriate disciplinary action against any attorney:
>
>> (A) for conduct unbecoming a member of the bar;
>>
>> (B) for failure to comply with these local rules or any other rule or order of this court;
>>
>> (C) for unethical behavior;
>>
>> (D) for inability to conduct litigation properly; or
>>
>> (E) because of conviction by an court of a misdemeanor offense involving dishonesty or false statement

L.R. AT-2(d)(1). In addition, the Local Rules explicitly adopt the standards for attorney conduct as laid out in the Texas Disciplinary Rules of Professional Conduct. L.R. AT-2(a). The Texas Disciplinary Rules of Professional Conduct state:

**Rule 1.01 Competent and Diligent Representation**

(b) In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer; or

(2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients.

(c) As used in this Rule, "Neglect" signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or client.

Texas Disciplinary Rules 1.01. This duty of diligent representation is supported by subsequent rules, such as Rule 3.01, which prohibits an attorney from taking a frivolous position, or Rule 3.02, which states that a lawyer "shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter." Texas Disciplinary Rules 3.01–2. The Texas Disciplinary Rules of Professional Conduct explain:

3. Dilatory practices indulged in merely for the convenience of lawyers bring the administration of justice into disrepute and normally will be "unreasonable" within the meaning of this Rule. . . . This Rule, however, does not require a lawyer to eliminate all conflicts between the demands placed on the lawyer's time by different clients and proceedings. Consequently, it is not professional misconduct either to seek (or as a matter of professional courtesy, to grant) reasonable delays in some matters in order to permit the competent discharge of a lawyer's multiple obligations.

Texas Disciplinary Rules 3.02.

The Court finds that Mr. Gillaspey has repeatedly violated the standards of attorney conduct as adopted by this Court's Local Rules and the Texas Disciplinary Rules of Professional Conduct and has violated Federal Rule of Civil Procedure 11. Despite multiple warnings from the Court to perform in a responsive and diligent manner, Mr. Gillaspey has continued to ignore

10

communications from Virtual Fleet for unproduced and overdue discovery (Dkt. No. 47, Dkt. No. 47-1, Ex. 1), emails and phone calls from the Mediator to schedule mediation in accordance with the Docket Control Order (Dkt. No. 46), and orders from this Court to appear at mediation and to appear in-person for a show cause hearing (Dkt. Nos. 48, 50).

In addition, Mr. Gillaspey's conduct has not only wasted the Court's, Plaintiff's, and the Mediator's time and resources, but has significantly harmed his client's defense. On June 16, 2017, Virtual Fleet filed a Motion to Dismiss Land's Counterclaim of Invalidity with Prejudice for Failure to Prosecute Pursuant to Rule 41(b). (Dkt. No. 31.) The motion was filed almost two months after Land's P.R. 3-3 Invalidity Contentions and P.R. 3-4 Supporting Documents deadline, and after at least five emails, one phone call, and one set of voicemails. (Dkt. No. 31-1, Ex. A; Dkt. No. 31-2, Ex. B at 2.) Despite an agreed one-month extension between the Parties (Dkt. No. 24) and multiple invitations by Virtual Fleet to resolve the issue of non-production, Land not only failed to produce its Invalidity Contentions, but also failed to even file a response to Virtual Fleet's Motion to Dismiss the Counterclaim of Invalidity with Prejudice. (Dkt. No. 31-1, Ex. A; Dkt. No. 35.) On September 21, 2017, the Court dismissed Land's counterclaims of invalidity with prejudice for failure to prosecute. (Dkt. No. 42.)

This harm is not isolated to one incident. Mr. Gillaspey failed to respond to written or telephonic communications from Virtual Fleet's counsel to identify disputed claim terms for a Markman hearing scheduled on October 30, 2017. (Dkt. No. 39 at 1–2.) As a result, Virtual Fleet submitted a "joint" claim construction statement on August 7, 2017, the day of the Joint Claim Construction Statement deadline, explaining that Land's silence was construed as an agreement that "there [was] no dispute as to the meanings and understandings of the terms of the claims of the '701 Patent." (*Id.* at 2.) At the September 18, 2017 status conference, the Court encouraged the

Parties to discuss the issue of claim construction, and to quickly confirm with the Court that there were no disputed claim terms and that a Markman hearing would be unnecessary. On October 3, 2017, the Parties filed a stipulation to the Court, explaining that the Parties agreed a Markman Hearing would not be required in the case and that the Parties intended to rely upon "the plain and ordinary meaning of all applicable claim terms." (Dkt. No. 43.)

Mr. Gillaspey's only explanation for his continued absentee behavior was that he believed the asserted patent was not enforceable.[4] (Hearing Tr. at 5:6–6:3, 8:8–9:5.) However, as this Court explained to Mr. Gillaspey during the Hearing, a belief in the invalidity of the patent is not an adequate explanation for the failure to comply with a court order. (*Id.* at 6:20–7:5.) Mr. Gillaspey did not file a notice to indicate that he would not be attending the mediation or seek an extension through a motion. The Court finds that Mr. Gillaspey's explanation is not evidence of good faith efforts to move the case expeditiously or to comply with the Court's orders.

In addition, with respect to the Emergency Motion, Mr. Gillaspey explained that Land still had complied its discovery obligations because most of the relevant documents were already in the public domain and that Land should not produce its financial documents to Virtual Fleet until the issue of liability is resolved.[5] (*Id.* at 14:14–17–16.) Virtual Fleet responded that in addition to

---

[4] Mr. Gillaspey referred the Court to the Opposition and the Motion to Alter Judgment, both of which were filed hours before the Hearing, and contended that the asserted patent was unenforceable because the PTAB instituted *inter partes* review on the patent. (Hearing Tr. at 5:6–14.) The Opposition is misleading. The Opposition, filed by Mr. Gillaspey, states: "Defendant unequivocally has a meritorious defense to the Plaintiff's claims, as established by, *inter alia*, the US Patent & Trademark Office making [sic] determination of unpatentability in the 2014 Mercedes instituted IPR proceedings." (Dkt. No. 52 at 6.) However, the referenced institution decisions never reached a final decision as a result of settlement. A decision of institution by the PTAB is not a determination of invalidity or ineligibility. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 ("The Patent Office's decision to initiate inter partes review is "preliminary," not "final.""). *See also TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016). When pressed, Mr. Gillaspey conceded that the PTAB only instituted review of the patent without reaching a final decision, but insisted that the institution "still raises the serious issues upon which [Land] based [its] defense." (Hearing Tr. at 14:22–24.)

[5] Mr. Gillaspey also contended that Land had produced over three hundred pages of documents to Virtual Fleet in response to Virtual Fleet's discovery requests. (Hearing Tr. at 10:15–21.) However, Virtual Fleet responded that the referenced documents, which were produced hours before the Hearing, primarily constituted of the IPR documents referred to in the Opposition and other publicly available information. (*Id.* at 19:13–16.)

the financial documents, Land had also failed to produce technical documents regarding the accused products, which are not available in the public domain. (*Id.* at 19:17–23.)

The Court finds that monetary sanctions are appropriate in this case. Mr. Gillaspey's behavior has wasted the resources of the Court, as well as the time and efforts of Virtual Fleet's counsel and the Mediator. Mr. Gillaspey had the opportunity to file a motion or notice before the Court, explaining why he would not be able to attend mediation. Instead, Mr. Gillaspey offered a belated and inadequate explanation based solely on his belief on the merits of the case, which, if anything, should have been an incentive to attend mediation. Regardless, Mr. Gillaspey waited until the day before the mediation to inform the Mediator that he would not be attending, despite a court order and multiple emails and phone calls from the Mediator confirming the mediation date.

Furthermore, Mr. Gillaspey has not offered a satisfactory justification for Land's continued failure to produce the Disclosures and its responses. Mr. Gillaspey alleged that Land produced documents, but the Disclosures do not include any design documents that are relevant to the accused products, any technical information that are relevant to infringement, or any of the financial records that are relevant to damages. (*Id.* at 12:11–22.) Furthermore, Land's reliance on "confidentiality" as a basis to withhold financial documents is unavailing. Mr. Gillaspey did not explain why the Court's Protective Order does not address Land's confidentiality concerns.

The Court finds that there has been no evidence of compliance since the status conference on September 18, 2017. The Court has seen no evidence of good faith, good cause, or reasonable conduct. The Court finds that Mr. Gillaspey has given the Court no explanation or rationale for his disobediences of the Court's clear and precise order regarding the mediation on November 17, 2017. (Dkt. No. 48.) In addition, the Court finds that there has not been compliance with the

responsibilities imposed on Land by the Local Rules, the Local Patent Rules, the Federal Rules of Civil Procedure, and the Discovery Order with regard to disclosure and production of material relevant to the litigation at hand.

Accordingly, the Court **ORDERS** Mr. Gillaspey to personally pay the Mediator, Mr. Cornelius, his full mediation fee for the mediation that did not take place on November 17, 2017 solely due to Mr. Gillaspey's failure to appear and failure to comply with the Court's order. Mr. Gillaspey is further **ORDERED** to reimburse Virtual Fleet and Virtual Fleet's counsel for any portion of that fee that was advanced or paid with regard to the mediation scheduled but which did not take place. Mr. Gillaspey is **ORDERED** to complete payment for the mediation within seventy-two (72) hours of the Hearing on November 28, 2017. In addition, the Court awards Virtual Fleet its costs and expenses in bringing the Emergency Motion. Land and Mr. Gillaspey are **ORDERED** to pay for Virtual Fleet's costs and expenses in bringing the Emergency Motion, jointly and severably.

The Court also believes that it is imperative to deter further improper conduct and undue delay by counsel in this case. "There is no question that the Court possesses the authority to remove an attorney from a case pursuant to its inherent power to regulate the conduct of attorneys practicing before it." *Lelsz*, 137 F.R.D. at 655–656 (collecting cases). *See also United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir. 1980) (affirming trial court's disqualification of attorney), *cert. denied*, 449 U.S. 961 (1980). The Court finds that the interests of the Parties, as well as the administration of justice, require that Mr. Gillaspey be removed from this case. Mr. Gillaspey has not only wasted the resources of the Court and Plaintiff, but has harmed his own client.

Accordingly, the Court **ORDERS** that Mr. Gillaspey is hereby **REMOVED** from further participation in this litigation. Mr. Gillaspey is **ORDERED** to notify his client, Land, in writing

that he has been removed and advising them to immediately retain replacement counsel. Such written notice to Land by Mr. Gillaspey shall include a copy of this Order. Mr. Gillaspey is **ORDERED** to serve such written notice on Land by certified mail, return receipt requested within twenty-four (24) hours of this Order. Mr. Gillaspey is **ORDERED** to file a copy of such written notice together with proof of service and acceptance upon Land with the clerk of this Court.

In addition, The Court **GRANTS** the Emergency Motion. (Dkt. No. 47.) Land is **ORDERED** to produce its Rule 26 Initial and Additional Disclosures, and to respond to Virtual Fleet's two sets of written discovery. (*Id.* at 5–6.) However, in light of Mr. Gillaspey's removal, this case is **STAYED** for thirty days from November 28, 2017. During that time, Land is to retain replacement counsel who shall promptly appear herein.

### IV. CONCLUSION

For the reasons stated above, Mr. Gillaspey is **REMOVED** from further participation in this case. Virtual Fleet's Emergency Motion to Compel and Request for Sanctions is **GRANTED**. It is further **ORDERED** that this case is **STAYED** for thirty days from November 28, 2017.

**So ORDERED and SIGNED this 29th day of November, 2017.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

15